IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


STEPHEN ALAN ALBERTS, II, Ed.D.,

     Plaintiff,

v.                                    Civil Action No. 5:09CV109
                                                         (STAMP)
WHEELING JESUIT UNIVERSITY
and DR. LETHA ZOOK,

     Defendants.


                  **MEMORANDUM OPINION AND ORDER**
            **GRANTING DEFENDANT WHEELING JESUIT UNIVERSITY'S**
                    **MOTION FOR SUMMARY JUDGMENT;**
            **DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**
            **DENYING AS MOOT THE PLAINTIFF'S ADDITIONAL REQUESTS**
              **FOR THIS COURT TO IMMEDIATELY ISSUE A FINAL ORDER;**
                   **DENYING THE PLAINTIFF'S FINANCIAL BURDEN**
                  **OF EVIDENCE PRODUCTION COUNTER CLAIM**
              **DENYING AS MOOT THE PLAINTIFF'S MOTIONS IN LIMINE;**
                      **AND DENYING AS MOOT THE DEFENDANT**
                **WHEELING JESUIT UNIVERSITY'S MOTIONS TO EXTEND**
                **TRIAL PREPARATION DATES AND CONTINUE TRIAL DATE;**

                      I. Procedural History

     The plaintiff, Stephen Alan Alberts, II, Ed.D. ("Alberts"), proceeding pro se,[1] filed the above-styled civil action in the United States District Court for the Western District of Pennsylvania against Wheeling Jesuit University ("WJU") and Dr. Letha Zook ("Zook"), in which Alberts alleges retaliation claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C.

---

     [1]"Pro se" describes a person who represents himself in a court proceeding without the assistance of a lawyer. Black's Law Dictionary 1341 (9th ed. 2009).

§ 621, et seq. ("ADEA").  The plaintiff then filed an amended complaint.  On October 1, 2009, the Western District of Pennsylvania transferred this action to this Court.  On February 12, 2010, this Court entered a memorandum opinion and order dismissing defendant Dr. Letha Zook as a party defendant for misjoinder.  On May 12, 2010, this Court denied the plaintiff's motion to transfer this civil action to the United States District Court for the Eastern District of Virginia.

Thereafter, on October 18, 2010, this Court received a letter entitled "plaintiff's response to order confirming the pronounced order of the court dated October 8, 2010" from Alberts.  In that letter, the plaintiff requested the undersigned judge to "immediately issue a final order ruling in plaintiff's favor."  This Court construed the letter as a motion for summary judgment.[2]  WJU then filed a combined motion for summary judgment and response to the plaintiff's motion for summary judgment.  The plaintiff did not initially respond.  This Court entered an order advising the plaintiff of his right to respond.  The plaintiff then filed a response to the defendant's motion for summary judgment to which the defendant replied.

---

[2]This Court notes that in the plaintiff's objections to Magistrate Judge Seibert's discovery orders, Document Nos. 198 and 237, and in the plaintiff's response to the defendant's motion for summary judgment, Document No. 239, the plaintiff repeats his request to this Court to immediately issue a final order ruling in the plaintiff's favor.  These motions are DENIED AS MOOT.

This Court has reviewed the parties' pleadings and the relevant law and believes that a decision on the merits on the motions for summary judgment is warranted.³ For the reasons that follow, defendant WJU's motion for summary judgment is granted and the plaintiff's motion for summary judgment is denied.⁴ Further, because this Court grants the defendant's motion for summary judgment, the defendant's motions in limine⁵ and the defendant's motions to extend trial preparation dates and continue trial date⁶ are denied as moot.⁷

---

³On November 10, 2010, the plaintiff filed a "financial burden of evidence production counter claim" in which he seeks "reciprocal billing compensation due to the continuance granted by this Court. In this "counter claim," the plaintiff cites no legal authority for his request. Accordingly, the plaintiff's "financial burden of evidence production counter claim must be DENIED.

⁴This Court affirmed Magistrate Judge Seibert's January 18, 2011 order, which imposed discovery sanctions against the plaintiff. These sanctions precluded the plaintiff from offering evidence as to several items which the plaintiff refused to provide as ordered by the Court. For the purposes of these motions for summary judgment, this Court has considered all the evidence of record, including any evidence that may be deemed excluded by his January 18, 2011 order.

⁵The defendant's motions in limine include Document Nos. 238, 240, 241, 242, 243, 244, 245, 246, 247, and 248.

⁶Document Nos. 251 and 252.

⁷In his motion for summary judgment, the plaintiff also requests that WJU and Zook be found in contempt of court; that WJU's attorney be barred from practicing law at this point of holding court; that state disbarment proceedings be instituted against any and all parties involved in evidence falsification; and that Magistrate Judge Seibert be relieved of all duties pertaining to this suit and all his previous rulings and orders in this case be rendered null and void. This Court DENIES each of these

## II. Facts

Defendant WJU hired the plaintiff as a consultant for WJU's Teacher Preparation Program in May 2006. The plaintiff's contract with WJU ended on August 20, 2006. Zook then hired the plaintiff as an associate professor and director of the Teacher Preparation Program. The plaintiff's contract for this job ran from August 21, 2006 to May 18, 2007. During his first semester as director of the Teacher Preparation Program, WJU received complaints from students and supervising teachers about the plaintiff. The plaintiff submitted a written resignation to Zook in December 2006, which she refused to accept.

WJU's Faculty Council makes recommendations to the Chief Academic Officer regarding whether first-year faculty members should receive a contract for the following academic year. Dr. Debra Hull, the chairperson of the psychology department, began the plaintiff's Faculty Council evaluation in January 2007. The plaintiff stated he would resign at the end of his contract if he received a positive letter of reference. The plaintiff made this statement prior to Dr. Hull's completion of his evaluation. Dr. Hull recommended that WJU accept the plaintiff's letter of resignation. The plaintiff then submitted a written resignation to Zook on February 6, 2007, which would take effect on May 18, 2007. The plaintiff tendered the letter to Zook prior to any requests.

4

recommendations regarding the renewal of his contract for a second year.  Zook provided the plaintiff with a letter of reference, dated May 15, 2007.  Zook revised the letter at the plaintiff's request and gave it to the plaintiff on May 16, 2007.  The plaintiff indicated that the May 16, 2007 letter was a "glowingly positive reference letter."  On March 3, 2008, the plaintiff filed a charge against WJU with the United States Equal Employment Opportunity Commission ("EEOC").  On March 18, 2009, the EEOC dismissed the charge and issued a notice of right to sue.

### III. Applicable Law

Under Rule 56(c) of the Federal Rules of Civil Procedure,

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v.

5

Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page

Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

This Court has carefully reviewed the parties' motions and related memoranda, and because the plaintiff is pro se, this Court has liberally construed the plaintiff's pleadings. See Haines v. Kerner, 404 U.S. 519 (1971) (holding pro se complaint to less stringent standards than formal pleadings drafted by lawyers).

## IV. Discussion

Title VII prohibits an employer from discriminating against an employee "because he [or she] has opposed any practice made an unlawful employment practice by this subchapter, or because he [or she] has made a charge . . . in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must show: "(1) that he engaged in a protected activity; (2) [the defendant] acted adversely against him; and (3) the protected activity was causally connected to the adverse action." Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007).

Similarly, the ADEA prohibits an employer from discriminating against an employee because that employee "has opposed any practice made unlawful by this section, or because such individual . . . has

7

opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this act." 29 U.S.C. § 623(d). A plaintiff must satisfy the same elements as above to establish a prima facie case of retaliation: "(1) the plaintiff engaged in a protected activity; (2) the employer took an adverse employment action against the plaintiff, and (3) a causal connection existed between the protected activity and the adverse employment action." Johnson v. Mechanics & Farmers Bank, 309 F. App'x 675, 684 (4th Cir. 2009) (citing Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989)).

This Court finds that the plaintiff has not established a prima facie case of retaliation either under Title VII or the ADEA. A protected activity "may fall into two categories, opposition and participation." E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 406 (4th Cir. 2005). The filing of an EEOC complaint is a participatory protected activity. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 656 (4th Cir. 1998). However, in this case, the plaintiff filed the EEOC complaint after the alleged retaliatory action. Therefore, this civil action involves alleged protected oppositional activities. Oppositional activities do not involve the formal process of adjudicating a discrimination claim." Laughlin v. Metro. Washington Airports

Auth., 149 F.3d 253, 259 (4th Cir. 1998). Instead, opposition activity includes such actions as "voicing one's opinions in order to bring attention to an employer's discriminatory activities." Id. The Fourth Circuit employs a balancing test to determine whether an employee has engaged in legitimate opposition activity by balancing "the purpose of the Act to protect persons engaging reasonably in activities opposing . . . discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981) (internal citations omitted).

In this case, this Court does not reach the balancing test as the plaintiff has not shown that he engaged in any oppositional protected activity. In his amended complaint, the plaintiff states that there were "unfair and unequal expectations regarding his female department members not performing their basic professorial duties." This statement alone does not show that the plaintiff engaged in a protected activity. WJU maintains an anti-harassment policy that prohibits discrimination and retaliation. The plaintiff did not report or complain of any discrimination while working for WJU. The plaintiff has provided no evidence that he engaged in a protected activity while employed at WJU.

In his response to the defendant's motion for summary judgment, the plaintiff states that Zook retaliated against him for

"whistleblowing." This conclusory statement is not enough to show engagement in a protected activity. In the amended complaint, the plaintiff states that the female department members were not performing their basic professorial duties. However, the plaintiff provides no evidence in his response to show that he engaged in any "whistleblowing" prior to his resignation.

Furthermore, the plaintiff has not shown that Zook took an adverse employment action against the plaintiff. In his amended complaint, the plaintiff alleges that Zook's preferential treatment of a female employee under the age of 40 and an uneven set of working conditions "evolved into outright animosity towards Dr. Alberts." He then states that "Dr. Zook's subsequent retaliation culminated in the forced resignation of the plaintiff in May 2007 as evidenced by the letter emanating from the Chairperson of the Faculty Council, Dr. Debra Hull." The plaintiff also alleges that Zook evades "speaking with any perspective new employers and/or outright negative characterization of plaintiff's professional abilities, in spite of her positive letter of recommendation dated May 16, 2007." Thus, the plaintiff alleged two possible adverse employment actions: (1) a forced resignation; and (2) negative references.

In his response to the motion for summary judgment, the plaintiff states that emails from his predecessor, Dr. Jones, to the plaintiff show that Zook displayed a lack of support for the

10

plaintiff's efforts in WJU's accreditation process and show that the plaintiff worked in intolerable working conditions. Even if true, that the plaintiff was not supported during the accreditation process by the dean, this allegation does not establish the objectively intolerable working conditions necessary to prove a constructive discharge. Williams v. Giant Food Inc., 370 F.3d 423, 434 (4th Cir. 2004). The Fourth Circuit has held that receiving poor evaluations, feeling unfairly criticized, working in difficult or unpleasant working conditions are all "not so intolerable as to compel a reasonable person to resign." Id.

The plaintiff has also failed to provide this Court with any evidence that Zook provided any employer with a negative reference. The defendant, however, produced an affidavit by Zook, stating that she had been contacted one time and never had provided the plaintiff a negative reference. The plaintiff references a document by Global Verification Services. The plaintiff hired Global Verification Services to perform a reference check on the plaintiff by calling Zook. The document provides that Zook stated she stood by the positive reference letter and that Zook stated the plaintiff's strength was that he is very driven and works hard. The person conducting the call for Global Verification Services stated that Zook's tone turned from professional to cold and annoyed when the caller stated she was calling regarding the plaintiff. This Court finds that this document does not create a

11

genuine issue of material fact. The plaintiff has failed to produce any evidence that Zook provided any prospective employer with a negative reference.

Finally, to prevail on either of his claims for retaliation, the plaintiff must show a causal connection between the protected activity and adverse employment action. The plaintiff cannot show that Zook forced him to resign or that she gave him a negative reference because he engaged in protected activity. The plaintiff has stated that he was forced to resign from the university to prevent a Faculty Council recommendation not to rehire him. As WJU states in its motion for summary judgment, the plaintiff provided notification of his resignation before the Faculty Council completed the performance evaluation and before the Faculty Council could issue a recommendation regarding his contract renewal. As stated above, the plaintiff can provide no evidence that Zook provided any employer with a negative reference. Moreover, the plaintiff has produced no evidence that an employer refused to hire the plaintiff based upon a negative reference from Zook. Accordingly, this Court finds that even if it did find protected activity or an adverse employment action, there is no causal connection between any alleged protected activity and any alleged adverse employment action.

In his response to the motion for summary judgment, the plaintiff also states that Zook had a secret meeting with eighteen

students.  This secret meeting was the student appeal regarding the complaints received against the plaintiff during his first semester as director.  Zook meeting with students when the plaintiff was not present does not create a genuine issue of material fact as to the plaintiff's claims of retaliation.  The plaintiff also contends in his response to the motion for summary judgment that a special education student should not have been allowed in the Teacher Education Program; that WJU fired a professor in the department; and that his successor was not enrolled in a doctoral program.  None of these contentions show that the plaintiff engaged in a protected activity, or that WJU took an adverse employment towards the plaintiff by either subjecting him to intolerable working conditions or by providing a prospective employer with a negative reference.

Finally, this Court believes that neither the EEOC's issuance of the right to sue letter nor any orders issued by the United States District Court for the Western District of Pennsylvania support the plaintiff's opposition to the defendant's motion for summary judgment.  The EEOC letter did not state that the defendant had violated the statutes at issue.  In addition, the Western District of Pennsylvania never issued a ruling stating that there were grounds for this suit.  Rather, that court issued an order granting the defendants' motion to transfer the civil action to

this Court and denied as moot the defendants' motion to dismiss for failure to state a claim.

Because the plaintiff has failed to present this Court with any evidence to establish a prima facie case of retaliation under either Title VII or the ADEA, this Court must grant the defendant's motion for summary judgment and deny the plaintiff's motion for summary judgment.

V.  Conclusion

For the reasons set forth above, defendant Wheeling Jesuit University's motion for summary judgment (Document No. 203) is GRANTED and the plaintiff's motion for summary judgment (Document No. 193) is DENIED.  Having so disposed of the motions for summary judgment, the plaintiff's additional requests for this Court to immediately issue a final order (Document Nos. 198, 237, and 239) are DENIED AS MOOT.  The plaintiff's financial burden of evidence production counter claim is DENIED.  The defendant's motions in limine (Document Nos. 238, 240, 241, 242, 243, 244, 245, 246, 247, and 248) and the defendant's motion to extend trial preparation dates and continue trial (Document Nos. 251 and 252) are DENIED AS MOOT.  Finally, to the extent that Document Nos. 198, 237, and 239 are motions for summary judgment, they are DENIED AS MOOT. Accordingly, it is ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

Should the plaintiff choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit, he is ADVISED that he must file a notice of appeal with the Clerk of this Court within 30 days after the date of the entry of the judgment order.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the _pro se_ plaintiff by regular mail, certified mail, and email and to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter. Accordingly, the pretrial conference, jury selection, and trial are VACATED.

DATED: May 25, 2011

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE